**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

JUANITA S. TURNER,

    PLAINTIFF,

VS.                                              CASE NO.: CV-12-J-619-NE

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

**Procedural Background**

The plaintiff applied for Supplemental Security Income on August 17, 2009, alleging an inability to work due to back problems and COPD (R. 168, 179). The administrative law judge (ALJ) reached a determination that the plaintiff was not disabled at any time through the date of his decision, July 14, 2011 (R. 22). The plaintiff appealed this decision to the Appeals Council which denied her request for review on December 20, 2011 (R. 1-3). The ALJ's decision thus became the final order of the Commissioner. *See* 42 U.S.C.§ 405(g). This action for judicial review

of the agency action followed (doc. 1). The court has considered the entire record and whether the decision of the ALJ is supported by substantial evidence. For the reasons set forth herein, this case is **REVERSED** and **REMANDED.**

## Factual Background

The plaintiff was born on May 31, 1960, and was fifty (50) years old as of the date of the hearing (R. 104, 136). She went as far as the seventh grade in school, with no GED or other education (R. 105). She had not worked in the ten years prior to her hearing, and alleged she could not do so because of shortness of breath and tiring easily, due to COPD (R.107). She uses a home nebulizer three times a day, which takes 20-25 minutes at a time, and then about an hour and a half after each one because its makes her shaky and dizzy (R. 108-109). Her lower back, hips and legs are painful due to arthritis (R. 109). Walking and bending increase this pain (R. 110). The plaintiff estimates she can stand for 30 minutes, walk for 15 minutes and sit for about 30 minutes at a time (R. 110-111). She also has to lie down during the day, for an hour or hour and a half at a time, because her pain medication makes her drowsy (R. 111). She takes Lortab 10 five times a day (R. 111) and muscle relaxers four times a day (R. 117). She also takes Xanax for anxiety (R. 117). Her pain is never less than a five on a scale of one to ten (R. 112) but sometimes goes up to a seven (R. 113). She had been going to a pain management doctor for about 14 months at the time of her hearing (R. 117).

The plaintiff no longer attends church, because sitting on the benches is painful (R. 114). She does not drive, but does cook using a microwave and does household chores slowly (R. 114, 120-121). She has to rest as she does them though (R. 122-123).

The vocational expert (VE) testified the plaintiff's past work was that of a janitor/cleaner, which was medium, unskilled work (R. 127). When asked to assume a person who could lift 20 pounds occasionally, ten pounds frequently, and who could stand for two of eight hours, walk for an additional two of eight hours, and sit for six hours at a time, with frequent climbing, balancing, stooping, kneeling, crouching, and crawling; pushing and pulling limited to occasional; and frequent reaching, handling and fingering, and asked whether such a person could perform plaintiff's past relevant work, the VE said "no" (R. 128). However, light work such as assembler, machine tender, and wire worker would be available within the above limitations (R. 128).

The medical evidence in the record at the time of the hearing demonstrates that the plaintiff has complained of ongoing low back pain since before 1999 (R. 254-264). These records reflect diagnoses of advanced spondylosis, mild to moderate in her thoracic spine, with disc bulges at T7-T8, T11-T12, and T12-L1, with mild to moderate loss of disc signal and height at all levels from T6-T7 and below. The T12-L1 bulge exerted slight mass effect upon the thecal sac (R. 265). Early anterior osteophytic lipping was seen at multiple locations in her lower thoracic spine (R.

265). Plaintiff's cervical spine showed advanced spondylosis for her age, loss of disc signal at C5-C6, with moderate disc bulging and early posterior osteophytosis (R. 266). Moderate degenerative disc disease was diagnosed at C5-C6, along with a small bulge at C3-C4 (R. 266). The plaintiff's lumbar spine also showed spondylosis, bulging discs and mild foraminal stenosis (R. 267).

A consultative disability examination was conducted on December 28, 2009, by Dr. V.S. Reddy, M.D. (R. 294). He noted cataracts, hearing loss and shortness of breath, with decreased breath sounds (R. 294). Dr. Reddy described plaintiff's musculoskeletal system as remarkable, noting tenderness on palpation of the posterior neck and lumbar spine (R. 295). He found the plaintiff limited from squatting completely, with a diagnosis of marked degenerative disc disease, cervical and lumbar spine; lumbar radiculopathy; and COPD (R. 295). The plaintiff's range of motion was determined to be limited in her spine, shoulders, hips, and knees (R. 296-297).

Chest x-rays due to plaintiff's history of COPD noted a potential L1 compression fracture with thoracolumbar discogenic degenerative disease (R. 326). A hospital admission in July of 2010 discharged the plaintiff with diagnoses of encepholopathy (resolved), rhabdomyolysis with renal failure (resolved), pneumonia (resolving), COPD exacerbation (resolving), tobacco dependence, hypertension, chronic pain syndrom, and leukocytosis (resolving) (R. 328).

Although one of plaintiff's regular treating physicians, Dr. Ronald E. Calhoun, declined to complete a Physical Capacities Evaluation (doc. 317), he did opine in a "To whom it may concern letter" that the plaintiff "is unable to work due to her medical condition" (R. 361). The plaintiff is also followed by Dr. Bart Bailey for pain management (R. 370). He has performed two epidural injections (R. 370-377). He completed a Physical Capacities Evaluation, in which he opined the plaintiff could lift ten pounds occasionally to five pounds frequently, could sit no more than two hour in an eight hour day, and stand or walk no more than one hour in an eight hour day (R. 387). He also believed the plaintiff limited to no more than occasional pushing and pulling, reaching, and working around hazardous machinery, and only rarely climbing or bending and stooping (R. 387). He based his opinion on plaintiff's degenerative joint disease (R. 387), with no mention of COPD. He further opined plaintiff had pain to an extent as to be distracting, physical activity would cause greatly increased pain to a point that caused distraction or abandonment of tasks, that medication would be necessary, and further that medication limited but did not eliminate plaintiff's ability to work (R. 388).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. If the claimant is successful the burden shifts to the

5

Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir.1987). "Even if the Court finds that the evidence weighs against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence." *Allen v. Schweiker*, 642 F.2d

799,800 (5th Cir.1981); *see also Harwell v. Heckler*, 735 F.2d 1292 (11th Cir.1984); *Martin v. Sullivan*, 894 F.2d 1520 (11th Cir.1990).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993).  No such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir. 1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987).  When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*.  The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she

is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ found that the plaintiff suffered from degenerative disc disease and COPD, which are severe impairments, but neither of which, singly or in combination, met or medically equaled the criteria of any of the Listing of Impairments found in 20 CFR 404, Subpart P, Appendix 1 (R. 14-15).[1]

The ALJ considered the plaintiff's subjective complaints of pain, but found the plaintiff's statements about the intensity, persistence and limiting effects of her symptoms "not credible to the extent they are inconsistent with the above residual functional capacity assessment" (R. 17). The ALJ made a residual functional capacity assessment that the plaintiff could engage in a limited range of light work (R. 16). He determined that the plaintiff's statements that she could prepare meals in a microwave, wash dishes slowly, and engage in other limited daily activities meant that her testimony concerning her limitations was not credible (R. 17).

---

[1] Oddly, no mention is made of the findings by Dr. Reddy of cataracts, or hearing loss (R. 294). While the plaintiff did not allege either of these as ailments in her disability report, in meeting his duty to develop a full and fair record, the ALJ should have at least asked whether the plaintiff did experience any limitations from the same. *See e.g., Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997).

The ALJ noted the objective medical evidence concerning degenerative disc disease in the plaintiff's spine at multiple levels, as well as Dr. Reddy's finding of marked degenerative disease (R. 18). He discussed the findings of COPD, but found it was not as severe as alleged (R. 18). The ALJ also discounted the opinion of Dr. Calhoun, one of plaintiff's treating physicians, that the plaintiff could not work based on the determination that "the other evidence in the record, which I acknowledge shows degenerative disc disease and COPD, does not show much in the way of limitations that would completely disable her" (R. 18). Similarly, the ALJ found Dr. Bailey's assessment of plaintiff's limitations entitled to little weight (R. 19), although Dr. Bailey is also one of plaintiff's treating physicians. In part, the ALJ made this decision based on his own opinion that the plaintiff would require a limited environment due to COPD, which was not mentioned by Dr. Bailey (R. 19). However, Dr. Bailey's opinion clearly states it is based solely on degenerative disc disease and not on any other ailment the plaintiff may have (R. 387).

Having considered the findings of the ALJ, the court finds the record devoid of any medical opinions to support his determination. The only possible place for support of the ALJ's determination is the opinion of Deborah Wright, a non-examining, non-consulting, non-physician, DDS Single Decision Maker (R. 19), which the ALJ found was consistent with his own opinion.

Despite the fact that the April 2009 MRIs found at least six bulging discs, mild to moderate thoracic spondylosis, moderate cervical degenerative disc disease, advanced spondylosis in her lumbar spine, and mild foraminal stenosis (R. 265-267), and despite that fact that Dr. Reddy referred to these findings as showing "marked" degenerative disc disease, as well as lumbar radiculopathy (R. 295), the ALJ's determined that the plaintiff's degenerative disc disease did not limit her as much as believed by Dr. Bailey or noted as marked by Dr. Reddy. The court finds the ALJ's opinion is wholly unsupported by the objective medical evidence in the record and flies in the face of the substantial evidence actually contained therein.

The law requires the ALJ to clearly articulate the reasons for giving less weight to the opinion of the treating physician, and the failure to do so is reversible error. Court have found "good cause" to not give controlling weight to a treating physician when the doctor's opinion was not bolstered by the evidence, where the evidence supported a contrary finding, or where the doctors' opinions were conclusory or inconsistent with their own medical records. *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir.2011) ; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). In order to disregard a treating physicians' opinion, the ALJ "must articulate [the] reasons" for doing so. *Winschel*, 631 F.3d at 1179. The fact that the treating physician's opinion is contradicted by a non-examining physician is not good

cause for rejecting the treating physician's opinion in favor of the non-examining physician's opinion. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988).

Having considered the medical records above, including the opinions of Dr. Calhoun, Dr. Bailey and Dr. Reddy, and then finding that the plaintiff could perform a limited range of light work, the ALJ thus discounted both of the plaintiff's treating physicians and the consultative examiner. The ALJ's logic for such a conclusion included that plaintiff's pain management doctor did not provide limitations based on COPD, and her doctor who treats her for COPD does not do more than provide medication (R. 18-19). Additionally, the ALJ found fault with Dr. Bailey's opinion that "pain is present to such an extent as to distracting to adequate performance of daily activities or work" because the plaintiff did not specifically state that very thing in her Function Report (R. 19).

The plaintiff's Function Report, so relied on by the ALJ, contains the following allegations by the plaintiff:

> I get up take my pain pill before I can even get around. I lay in bed alot (sic), watch T.V. I have to lay so long than I have to sit so so, mine left hip is awful, I can't breath without my inhaler. I can't breath long enough to wash my hair.

(R. 160). As to her sleep, the plaintiff states "I wake up can't breath, mine back and hips hurt so bad, sometimes I'm up for 2 hours" (R. 161). As far as meal preparation, which the ALJ determined the plaintiff did, she states she is "limited, because of

11

breathing, and back pain, even my neck hurts if I'm trying to do the things I can't. (R. 162). Similarly, as to the cleaning and laundry activities the ALJ found the plaintiff performed, she stated, "About 2 pm in the day I feel half good enough to wash my cloth's and try to do what I can" but then added "When I'm doing anything, I have to take a break [every] 20 or 30 min." (R. 162). She added that family members help her out a lot (R. 162).

The ALJ's use of the above statements to reach a determination that the plaintiff "has admitted to being able to perform various activities such as meal preparation, laundry, dishwashing, sweeping and grocery shopping" (R. 17) completely misconstrues plaintiff's testimony and Function Report. More importantly, the plaintiff's statements do not provide any basis to find her treating physicians' opinions inconsistent with the evidence of record. Rather, the ALJ chose to ignore their opinions, ignore the Function Report and ignore plaintiff's testimony, and pick and choose at Dr. Reddy's opinion to support his own opinion regarding what the plaintiff could do. In other words, once the ALJ eliminated all of the evidence in the record, he then determined there was no evidence which supported the limitations the plaintiff alleged.

Applying the Eleventh Circuit pain standard to assess the plaintiff's credibility regarding her symptoms, the court finds evidence of underlying medical conditions with objectively determined medical conditions that can reasonably be expected to

give rise to the claimed pain. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir.2002). No doctor has opined that the plaintiff was exaggerating her symptoms, shortness of breath, or pain and limitations arising from her degenerative disc disease.

20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.1995). "When evaluating a claimant's subjective symptoms, the ALJ must consider the following factors: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii)[p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief ... of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Security Administration*, 377 Fed.Appx. 944, 947 (11th Cir.2010), quoting 20 C.F.R. §§ 404.1529(c)(3); *see also* SSR 96–7p ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence ... that the adjudicator must consider in addition to the objective medical

13

evidence when assessing the credibility of an individual's statements[.]" (emphasis supplied)).

Here, the ALJ engaged in none of this analysis. He did not consider that plaintiff takes five ten milligram Lortab daily to help control her pain, he did not consider her testimony that she has to frequently stop and rest to perform activities such as washing dishes, that she lies down often during the day, or that she takes breathing treatments which are time consuming and sometimes make her dizzy.

Failing to engage in any of the relevant analysis, the ALJ merely applied a "pick and choose and eliminate it all" method to determine the plaintiff's severe ailments, and to support the limitations to the VE in his hypothetical he seemingly crafted out of thin air. While some of the given limitations may be grounded on a finding that the plaintiff is limited in her ability to perform work related activity due to her back, the court can only guess. The ALJ's determination that the plaintiff can carry 10 pounds frequently, stand and walk for two hours each in an eight hour work day, sit for six hours in an eight hour work day, frequently climb, balance stoop, kneel, crouch and crawl, but only occasionally push and pull with her arms and legs has no basis in the record, unless the ALJ both credited and discredited the severity of the plaintiff's degenerative disc disease. Furthermore, this seemingly ignores Dr. Reddy's finding that the plaintiff was wholly unable to squat, and noted on the accompanying range of motion chart the limitations in her knees (R. 297).

Significantly, Dr. Reddy opined, based upon his review of her records, the degree of plaintiff's degenerative disc disease was "marked." Accordingly, under the facts of this case, the ALJ's RFC determination is not substantially supported.

Having disposed of all of the medical evidence by doctors who actually examined the plaintiff, the ALJ cites the opinion of Deborah Wright, the DDS Single Decision Maker, states he did not rely on it as a medical opinion, and then states he gave "it such weight as is consistent with this opinion. The SDM found the claimant capable of performing less than the full range of light work with some postural and environmental limitations.... This opinion is consistent with my findings..." (R. 19). Thus, it is really only his own medical opinion on which the ALJ relies.

This court finds that the records of the treating and consultative physicians in evidence support each other. No medical evidence contradicts these physicians' conclusions, and none of them opined that the plaintiff was malingering. Rather, they demonstrate that each of the plaintiff's treating physicians took her complaints seriously and have tried to treat plaintiff's symptoms to provide her with pain and breathing relief. The court finds the record devoid of substantial evidence to support the decision of the ALJ. The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th Cir.1991).

"[A]s a hearing officer [the ALJ] may not arbitrarily substitute his own hunch or intuition for that of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir.1992). *See also Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir.1986). The ALJ cannot arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982); *see also Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985). He also cannot reject the treating physicians' opinions in favor of a non-examining doctor. "A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis." *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2nd Cir.1987); citing *Strickland v. Harris*, 615 F.2d 1103, 1009 (5th Cir.1980) ("the reports of physicians who did not examine the claimant, taken alone, would not be substantial evidence on which to base an administrative decision).

By inferring that the plaintiff was able to work from his selective review of the evidence, the ALJ substituted his opinion for that of all of the medical reports in the file. The ALJ did not consider all of the evidence that was introduced. His finding that the plaintiff is not disabled is against the substantial weight of the evidence.

## Conclusion

When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Commissioner should have

made. *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D.Fla.1984). Thus, this court has the authority under 42 U.S.C. §405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner's determination is in plain disregard of the overwhelming weight of the evidence. *Davis v. Shalala*, 985 F.2d at 534; *Bowen v. Heckler*, 748 F.2d 629, 636 (11th Cir.1984). Here, the ALJ has disregarded the evidence in the record . Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED.** This case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

    **DONE** and **ORDERED** the 12th day of February, 2014.

                                        INGE PRYTZ JOHNSON
                                        SENIOR   U.S.   DISTRICT   JUDGE